Our last case this term is Case 12-786, Limelight Networks v. Akamai Technologies. Mr. Panner. Mr. Chief Justice, and may it please the Court. The text of the Patent Act and this Court's precedents answer the question that is properly before this Court. There is no liability for indirect infringement under Section 271B unless the defendant has deliberately brought about actionable direct infringement under Section 271A. And that conclusion is strongly reinforced by the principle that the patent laws best promote the legitimate interests of inventors, of the innovative community, and the public when rules and boundaries are clear. The Patent Act draws a clear distinction between conduct that invades a patentee's exclusive rights and conduct that gives rise to secondary or indirect liability. And this Court has consistently refused to blur those statutory lines simply because a patent owner complains of supposed unfairness in a particular case. Instead, it is for Congress to make adjustments as it did, for example, in response to this Court's decision in Deep South. It is likewise critically important for the scope of patent claims to be clear so that the public has clear notice of the patentee's exclusive rights. And as between a patentee who can choose the language to embody the invention and the public, legal rules should place the obligation on the patentee to define clearly the scope of what is invented. Ginsburg, is this a problem that's special to business method patents as opposed to, let's say, product? I think it is a problem that arises with method patents, Your Honor, wouldn't necessarily be exclusively with business method patents, but I think it is more often in circumstances where there are interactions among various individuals carrying out steps of a — of what would be called a business method in many cases. Well, should the rule be different for a method patent than a device patent? Well, I don't think the rule is different, Your Honor. In part, that's because the statute isn't different, I assume. That's exactly right, Your Honor. And of course, it's true that method patents have in some ways more restricted rights associated with them. It's hard to — you don't make a method or sell a method, but you use a method by carrying out each and every step of that method. And it's very well established, and it's one reflection of the all-elements rule, which is, again, very old, that one doesn't have infringement unless all the steps of the patent are carried out. Now, that's the rule that the Federal Circuit applied in finding that there was no infringement — direct infringement under Section 271A. That issue is not properly before the Court at this point because it was the subject of a cross-petition that has not been granted. Your position makes it pretty easy to get around patent protection, doesn't it? All you've got to do is find one step in the process and essentially outsource it or make it attractive for someone else to perform that particular step, and you've essentially invalidated the patent. I don't think so, Your Honor, in the following — in two following senses. First of all, empirically speaking, there have not been very many cases in which this has proven to be a problem. It has been a long — a long-understood principle of patent claim drafting that method claims should be drafted from the point of view of a potential infringer so that all of the steps can be carried out by that potential infringer. And prospectively, certainly, and given that this rule has been clearly articulated by the Federal Circuit now for many years, or at least several years, prospectively, the patent applicant has every incentive to draft claims from the point of view of a single potential infringer. This — the claim that's at issue here, there's no dispute it could have been written in such a way that the steps would have been carried out by a single infringer, and indeed, that may have been the intent. What the inventor had in mind may well have been — Well, but it would be — when you say it would be written that way, it would be by not claiming one step in the method, I assume, which changes the whole patent. Well, it would be — it would be to claim what is carried out from the point of view of the potential infringer. So for example, in this case, what the method claim could have been written to say rather than to tag an embedded object, to deliver an embedded object in response to a request for that object wherein the request was made. But you don't know really in every patent whether the tagging is an important part of the process or not. Well, by definition, Your Honor, the — every step is material and important to the invention. That is really very deeply — deeply ingrained in the patent law. But I don't understand what you're saying. You're saying that you can avoid the problem if the patent is drawn in such a way as, what, to require a single person to do all the steps? Well, it is — How does that give you any more protection? I mean, you can still violate the patent by not having one person do all the steps. Have another person do some of the steps. And it's just as effective in stealing the idea, and yet there would not be a violation of the patent. Your Honor, I would take issue with that because I don't think that that's — first of all, to the extent that one is being — one is using an agent where there would be a vicarious liability for that conduct. Yeah, that — of course. But we're not talking about agents. We're talking about somebody who simply cooperates with you. He's not your agent. Well, Your Honor, that reflects — that reflects the very well-settled principles of patent law, including the principle that the alleged — the defendant must carry out every step of the patent. It reflects the fact that where there is attribution of conduct, if you have a circumstance — Yeah, I agree with you. I mean, I'm not arguing about that. I'm just — I'm just arguing about whether the safe haven you have given us for — for a patent really exists. It doesn't seem to me you can avoid the problem by simply requiring all the steps to be conducted by — by one person. Well, Your Honor, in — in my experience in terms of dealing with patents that are written to technologies that do involve interactions, for example, between cellular phones and networks and content providers who are sending content to a phone, for example, it is very common to draft claims from the point of view of someone who's participating in that process so that all of the steps will be carried out in — by that person. Is that what the briefs are talking about as a single-actor rule? Yeah. It's referred to sometimes as a single-entity rule. I think that's a little bit of a misnomer, because, of course, there could be multiple people involved with the alleged infringement in a circumstance where the acts of one actor are attributable to the principal under principles of vicarious liability. And, you know, if there were a concern, Justice Scalia, about the — the potential for evasion, that's something that Congress can address. Essentially, the rule that is being — You say this isn't here anyway, right? That's correct, Your Honor. Okay. And 11 of the 12 judges on the Federal Circuit agreed with your position on the thing,  Well, 10 of 11 — 10 of 11. Just to be clear, I don't want to overstate, the majority below did not purport to address this question. It said that it was leaving in place prior law which establishes this position. The dissent expressly adopted it, and then there was one — one judge below who indicated her disagreement. Okay. So how many out of — out of how many? Maybe that's why we didn't grant the cross-petition. It may well be, Your Honor. It may well be. But the parties briefed — this case tends to be rather confusing, because didn't the parties brief, what is it, 271-1, and then the Federal Circuit decided it on sub-2? So, Your Honor, that is — that's accurate. What happened in the case, just to go over quickly the procedural history, Akamai moved for rehearing from the panel decision. Akamai had pursued their case as a direct infringement case under 271a. The Federal Circuit granted that en banc petition. They subsequently granted an en banc petition in a case involving McKesson and Epic. And that case did present a question of indirect infringement under Section 271b. And when the Federal Circuit heard the case, therefore, they had the — the, you know, 271 more broadly before them, and they decided the case on the grounds of 271b, which was — and then they offered Akamai the benefit of — of that decision, and that's why we petitioned for — for certiorari. And the cross-petition was prompted by their dissatisfaction with the 271a rule that was applied by the panel. But I do — Sotomayor, I don't understand, and perhaps I'm just confused. I thought the issue we granted cert on was whether you could have an inducement of infringement if no one is directly infringing it. That's exactly right, Your Honor. All right. So — so the question the Federal Circuit below didn't deal with, did someone directly infringe at all? The — the en banc court did not, Your Honor. The panel decided it, and the en banc court chose not to disturb that. And so I do agree with Your Honor that there's a straight — that there's a very straightforward path to this Court reversing this case on the question that's properly presented by our petition, which is to say simply that under the plain language of Section 271b, that if there is no direct infringement, actionable direct infringement under Section 271a, that there is no liability. And that's a very straightforward — And that direct infringement question would still be open before the Court below? Potentially, Your Honor, yes. I mean, we would certainly — we don't think it's a cert-worthy question, and we would urge — we have urged the Court to deny the cross-petition, but — And how would it — just to follow up, how would it still be open for the Court below? It was decided, en banc review was not granted. Isn't that done? Well, en banc review actually was granted, Your Honor, because the — On the direct infringement question? Yes, Your Honor. And they just didn't reach it? Correct, Your Honor. And, Mr. Penner, if they did reach it the second time around, and they decided, well, now that this inducement theory is not available to us, we think that there is a real problem here, that there is a kind of end run around the patent law, and so we're going to change what we think on the 271a question, if they did that, would it be right to say it would render our opinion on the 271b question a nullity? Well, Your Honor, it is — that may be right in the following sense, that it's often true that this Court will take a question where there's an underlying prior legal ruling that the Court doesn't choose to review or doesn't disturb. And it's — in any circumstance like that, it's true that there's a potential that the prior rule might later be disturbed, and then that would alter the effect of the judgment. But I guess the question I'm asking, I mean, I can't think of a way in which our decision on the 271b question would be relevant for any case if the Federal Circuit on remand goes the opposite way in a — on the 271a question. But maybe I'm not thinking more broadly enough. I don't think so, Your Honor, because if — if the Court were to keep — if the Court were to maintain that rule, if the Court were to affirm the rule that the Federal Circuit articulated, that might reach circumstances that would continue to provide — potentially provide an avenue for claims of induced infringement in circumstances where on some hypothetical new joint infringement doctrine under Section 271a, there might not be a claim. So in other words, there's — Yeah. I suppose I just couldn't think of a place where somebody would make the 271b claim if the 271a claim were available to it. Your Honor, that's probably right, and that's a very good reason for the Court to recognize that the Section 271b ruling is incorrect. It essentially swallows — I should say — let me back up. It's a good reason to recognize that Akamai's theory about Section 271a, that 271a ought to be expanded. Now, I realize that's not — not before the Court, and we're not asking the Court to reach that. But it's a good reason to think that the question before us really has no significance that I can think of unless the court of appeals, unless the Federal Circuit is right about a. Well, again, Your Honor, it's certainly — You're asking us to decide a question, to assume the answer to the question on a, and then decide a question on b that is of no value, no significant Maybe I don't understand some other — I don't see some other situations where it would apply of no significance unless the ruling on a stands, unless Muni Auction is correct. Well, Your Honor, again, I think that there's — there are — there might be circumstances where Section 271a would still — still not apply, and there might be an argument that, depending on what the more — we're talking about a hypothetical 271a rule that's broader, and we don't know what it would look like. And so whether that would leave room for 271b, it is certainly correct that if this Court were to say there is no indirect liability under Section 271b, as we would urge the Court to do, without direct infringement under 271a, that resolves this question. Whether there would be further development under 271a, we would certainly urge the Federal Circuit not to change the ruling. And so on that — I just want to make clear, you're saying that under existing law, the question presented makes a huge difference. If existing law is changed, it may not make a difference. That's exactly right. I suppose that's true in every case we hear. That's well said, Your Honor. But I suppose, Mr. Panner, what might make this a little bit different is that not withstanding what you said about 10 of 11 judges, it was clear that the judges thought that there was a real problem here in terms of an end run. And they looked at this and said, well, we could do it under 271a, or we could do it under 271b, and 271b seems a lot more natural and better for various reasons. But your sense in reading the opinion that all those judges who did it under 271b are just going to go back and do the exact same thing under 271a? I would — I certainly wouldn't agree with that, Your Honor. I think that the fact that liability under 271a would actually be somewhat of a disaster for the innovative community because of the breadth of a strict liability claim under section 271a, that's precisely why absolutely on a policy — you know, based on a policy judgment. But that's the reason that the decision should be reversed. The Federal Circuit did make a policy judgment, tried to amend the statute to reach a result that they thought was fair in the particular case. That's a job for Congress.  You could. Thank you, Your Honor. Ms. Anders. Mr. Chief Justice, and may it please the Court. The Federal Circuit's holding that a party may be liable for inducing infringement under section 271b, even though no one has committed direct infringement, is wrong for two primary reasons. First, section 271b's text makes clear that to be liable for inducement, a party must induce conduct that constitutes direct infringement under 271a. And second, I think in expanding 271b, the Federal Circuit departed from the approach that this Court has — has repeatedly employed in interpreting section 271. I think the Federal Circuit was understandably concerned about allowing inducers who perform some steps of a process themselves to escape liability. But this Court has twice held in both Microsoft v. AT&T and before that, Deep South v. Latrim, that judicial concerns about gaps in 271's coverage should not drive the Court's interpretation of that provision. That is because any time that you close a gap in 271, expanding patent rights, you are invariably implicating competing policy concerns, and it's for Congress to resolve those concerns. So to go to the concern about circumvention, I think if Congress were just considering the traditional active inducer who simply induces a party to perform all the steps of a process, that person compared to someone who performs some steps himself and induces someone else to perform the rest of the steps, there's no obvious policy reason to distinguish between those two actors. Alito Is there any policy reason for — that could support a holding, if you were — if you were in Congress, support the conclusion that there would — there was not infringement on the facts here? Under 271b, I think the — No, no. I don't — I mean if you were writing a statute, if you were amending — you said there are competing policy concerns. What are the — what policy concerns would support a holding, a conclusion that there was no infringement on the facts here? Well, I think the concern that comes from expanding 271b, I think, is ably represented by the Internet service providers, the wireless providers, the software. Scalia Is she talking about b or a? I thought the question went to a, and you're answering b. Yeah. I'm sorry. I was — I may be wrong on that. Well, I don't care, a or b, whatever, or c or d or z. What policy concern, if you — a, is — what policy concern would support the conclusion that there is an infringement when — on the facts of this case? Well, I think one of the concerns is that if you expand inducement so that you — someone only has to induce one sentence on this. I think what he's saying is, is there any good reason that they aren't liable for infringement? Is that if a — Yeah, exactly. All right. And I thought the reason you have to answer it is because when you have many steps in a process, and this is very similar to the process of the book I'm reading now about the Seabees building constructions in World War II, you know, they put some forward warehouses and they put some other stuff in some other warehouses and they make the eventual thing by shipping this from over there and the other place. So it's tough. Now, you'll probably want to insist upon a pretty strict relationship between the different parties in a joint venture or more before you hold them liable. In other words, there's an issue I don't know about. How close was this relationship? And I ask you that because you're going to answer his question, and I want to just see if my stab in the dark here is somewhere close to the — to what you were about to say. Well, I think that's right, Justice Breyer. I think if you look at this as a problem under 271A, which again is not the question before the Court, but if you do, what everyone agrees, I think, is that you can use traditional, well-established tort principles of attribution in order to conclude that someone who has not personally performed all the steps of a process nonetheless should be liable for using the process because they have worked in concert with someone else. I think everyone agrees on that. Scalia. But that is not the tort rule for what this is, which is an absolute liability. I mean, you ask for the policy reason. The policy reason is someone who does not even know about the existence of the patent, who happens to be one of the people who performs one or more of the steps, is suddenly automatically liable. That's the policy reason. It's a strict liability tort. I think that's absolutely the reason that we — I think we would all agree that if you had two unrelated parties who each happened to use some steps of a process, happened to perform some steps unbeknownst to each other, we wouldn't say that those people had used the process in any reasonable construction of the term. You can't use traditional rules. Scalia, even nonced to each other, but one of them who is nonced doesn't know about the patent. He would still be liable, wouldn't he? It depends on what tort principles you would use under 271A, but I think that is a significant concern, and it is one that this Court would have to take into account in deciding what tort principles to incorporate in 271A. Wait a minute. I think under Justice Scalia's example, you're not liable today, because if they're on the method patent, they have — someone has to practice the four steps, and they have to be vicariously liable, correct? Well, I think the rule is that you either have to practice all of the steps yourself or you have to have them attributed to you under traditional tort principles of attribution. Right. Exactly. The Federal Circuit has said principal agent right now. That rule makes sense. I think everyone agrees that that rule at least is correct. If the Court wanted to broaden that out, it would have to consider, I think, the significant concern about expanding liability too far so that you have parties who don't know about the patent, who don't know exactly what steps they need to perform or avoid performing. But in some ways, that's why the Federal Circuit did what it did, right? I mean, you can look at the Federal Circuit's ruling and say it makes no sense. How can you induce infringement if there's no infringement in the first place? And that's a very strong argument. But the reason they put this under 271B rather than under 271A is because of what Justice Scalia said, that 271B is not a strict liability offense, and so that you can say you have to know and you have to have instructed the person. So, you know, they thought that they were being very clever by putting it into a 271B box and avoiding the strict liability consequences of what they were doing, but also avoiding the possibility of an end run of the patent law. I think that's right. I think another reason the Federal Circuit might not want to have it. Also avoiding the text of the statute. There is that problem. There is that problem. Right. I think the problem under 271A for the Federal Circuit was that well-established tort doctrines don't support attribution liability when you have a vendor-customer. So it turned to 271B. The problem with 271B, as Justice Scalia said, is that it's very clear from the text of the statute that the conduct induced has to be direct infringement. And I think the Court has twice before confronted situations where there was conduct that clearly was intended to circumvent the Patent Act. In both Microsoft v. AT&T and Deep South, it was very clear that what the defendant was trying to do was ship operations overseas so that it could avoid the Patent Act. And in both of those cases, the Court reversed lower court decisions that had used that desire to stop circumvention as the primary driver of its interpretation of the Act. So in both cases, the Court said to be liable under 271, you have to satisfy the requirements of 271. We are not going to interpret the text simply to avoid circumvention concerns, even when, you know, you would say if you were looking from the perspective of the patentee that essentially their patent had been performed. In both cases, the Court said it is for Congress to make that judgment because there will always be countervailing policy concerns. And I think that's the case. Ginsburg. Ginsburg. Ms. Anders, will you clarify if the government, which has now told us what its position is on sub B, also has a position on sub A, which is what the Federal Circuit originally decided this case under? Well, I think we haven't briefed that question. I think we, if the Court were to decide that issue, we think it probably should order further briefing. But I would say three things about it which I think are relevant both to why we think the Court shouldn't decide the issue in this case and relevant to our view of the merits. The first is that, as we've been discussing, the 271A issue, I think, raises a very different legal question than the 271B issue. 271A turns on what the content and application of well-established tort doctrines. I think there's substantial disagreement about what the content of those doctrines are and how they would apply here, which would, I think, need to be decided by looking at treatises, State law, how these doctrines have been applied. That relates to the second point, which I think is that these tort doctrines properly applied, we don't think apply easily to the vendor-customer situation. There is no agreement to circumvent the patent. There's no common pecuniary interest of the sort that courts have looked for when they've looked at joint enterprise cases or conspiracy cases. So I think, you know, although one of the most pressing policy concerns, I think, addressed by or raised by the other side's amici is this idea of two people agreeing to circumvent a patent. I don't think that situation can easily be resolved here because we have a vendor-customer situation here. And so I think the Court could, I think, resolve that question in a future case. And then the final thing I would say is that Sotomayor I have one last question. In your briefing, I think your adversary, your Mr. Panner, mentioned it, too. You said that there's some kind of method patents that simply cannot be drafted from the perspective of a single entity. Could you give me an example? And how that would be circumvented or how you can't get it circumvented? It's hard to give a very concrete example, but I think patents that involve the use of different machines that have to be operated by two people might be an example. And I think even if you draft patents from the perspective of a single actor, it's always theoretically possible for different actors to split up the claims or split up the steps of the process to use them together. But we think that's one thing that Congress should consider in deciding what the rule should be here. You had a third point you were going to make on 271A. The third point was just something that I think we already alluded to a little bit, which is that when the Court is deciding what tort doctrines to import into 271A, I think there's a lot of reason for caution, because if you expand the doctrines too much and you use doctrines that don't require a whole lot of knowledge, then you are going to increase uncertainty and litigation burdens and ultimately chill innovation. Thank you, counsel. Mr. Waxman. Mr. Chief Justice, and may it please the Court. Please make no mistake about what Limelight is asking you to do. Under Limelight's theory, two or more people can divide up and perform the steps of any method claim, however drafted, without liability. Imagine, for example, to go to the question, Justice Ginsburg's question about business method patents, imagine a pretty common medical treatment claim. Let's assume that there is disclosure and patenting of a cure for cancer or a novel treatment for cancer that involves, as they often do, the administration of different drugs sequentially. And two parties get together and say, I'll administer drug one, you administer drug two, and we can take advantage of this marvelous patented process without paying anything, giving anything whatsoever to the company that spent a billion dollars and 25 years of helping us. Sotomayor, isn't that a partnership? Excuse me? Isn't that a partnership? It would not necessarily be a partnership. I mean, the fact of the matter is that's — there's no reason why it would have to be. We don't have to have a formal partnership. We don't have to have a formal obligation. There's nothing in the law that requires a formal partnership. This is exactly, exactly the point here, which is that as this Court has taught, the Patent Act, and in particular 271A, imports common law principles of liability unless the law, the Patent Act, clearly can be read to exclude them. And the whole fight here, if you'll pardon me, on the 271A question, which is a predicate question to the 271B question, as it was in Aero and Deep South and the Sony Betamax case, the 271A question is just which common law rules of attribution apply. Now, the Court, the panel below said, well, we know there are only two rules that apply. One is if there is a binding contractual obligation by each party to perform all the joint steps, and two, if there is a formal agency-principal relationship. Those two are correct. At common law, there was attribution for tort liability, whether it was strict negligence or intentional, under those circumstances. But you can consult any of the treatises that we cite at pages 25 through 27 of our brief. There were also was a well-recognized attribution doctrine that applied where there was direction and control, that is, one party directed or controlled the other, which is the basis on which the jury found liability here, and also where the parties were engaged in a concerted action or a common plan. And, Justice Scalia, to your point about, you know, people could be inadvertently liable even if they didn't know about all the steps or they didn't know each other, the common law didn't accommodate those circumstances. The common law required, across tort law, whether it's strict liability tort law like trespass, libel, conversion, patent infringement, required not that you know about and intend to violate the patent, but in order to be — have another party's conduct attributed to you, you had to know about the other party's conduct. Scalia. I think there's disagreement about whether only those two, namely agency or what's the other? Contractual obligation. Contractual obligation. Whether only those two at common law would apply to strict liability torts. There's disagreement on that point. If you are absolutely clear that that's what the common law did, but I don't think that's what the common law did. You know, let me just say to you. Not for strict liability torts. Let me just say, Justice Scalia, that the proposition that they've asserted, and I gather that you're crediting in their reply brief, that where the underlying tort is strict liability, the attribution rules have to be these formal non-knowledge rules. They don't have a — they have not cited a single case in support of that proposition There is no logical reason why it would necessarily be true. And I can give you cases that suggest, that quite definitely suggest the other, including a patent case that all the parties have been writing about, which is Jackson v. Nagel. That was a case in which there was an infringement of a method patent where some of the steps were performed by a contractor and some of the steps were performed by the subcontractor. And there is no respondeat superior in the common law for contractor-subcontractor relationship. The Court found them both individually liable, even though neither completed all the steps under what the Court called principles of joint liability. Well, under your submission, in a process patent, if the consumer adds the final step, vast numbers of consumers, and let's assume they have noticed, they've been notified that they can't do this, then there's liability. Well, I mean, look, I — before I came here this morning using my smartphone, I am sure that technically I performed the last step of probably 15 different method patents. Consumers aren't sued under patent law for infringement, whether there is a single user or multiple users. And here — You haven't yet until we have issued the case in your favor. No, no, not — not at all. Quite — quite to the contrary. The consumer — first of all, consumers aren't sued because under the patent law, under — unlike copyright law, there are no liquidated damages. No one sues individual consumers. The consumers — the customers in this case are big companies like Microsoft and CNN and ESPN, who operate these websites using the patented method through Limelight Services. But more to the point here, Justice Kennedy, the point is that there — at common law, there was no liability absent knowledge about who was doing all of the other steps. And that was the protection that existed. You could always send a letter to people saying, you may not have known about it in the past, but now you know about it. That rendering plant that you built turns out to be part of a — together with many other pollution-emitting sources constitutes a nuisance, a strict liability, often a strict liability crime. And now that you know about it, you're liable. And that's — that was the law. That was the rule. But the — I think the consequences here to consumers, if you're talking about consumers rather than the parties that knowingly, under Limelight's direction, performed a critical step in the patented method, were not traditionally sued. They were not traditionally liable. And it was the — A, the absence of knowledge of what everybody else was doing. I mean, the consumer in your hypothetical, Justice Kennedy, may get a letter saying, well, we have a patent on, you know, what Nokia's phone does, and you're infringing it. At common law, there would be no attribution to you of all the steps that — of what Nokia was otherwise doing, unless you knew specifically the specific steps of the claim method that were being patented. And so in this whole discussion about, you know, is the only question before the question of whether you should or shouldn't grant our pending conditional cross petition, assuming you don't want to do it, you should address — I mean, you could affirm the Federal Circuit on the theory that it adopted, and I am prepared to defend it, because I think it was correct. But at a minimum, we think, in order to provide a full analysis under 271B and to say that Mr. Panner is brilliant, but his math on the court below is wrong, there were four judges on the en banc court who disagreed with us on direct liability. The five in the majority took no position. They said that they had no occasion to address it at this time. Kennedy, if you don't prevail on your indirect infringement claim, can you re-litigate the direct infringement case in the — before the en banc court, or? I think both the government and — at the petition stage, both the government and Limelight took pains to point out that if you simply reverse and don't grant the cross petition, the Federal Circuit will have in front of it the question on which it granted en banc review and vacated the panel decision. But I would go farther. No matter — if you affirm, either on 271 grounds on its own right or 271 grounds using an analysis similar to what you did in Arrow and Deep South and the Sony Betamax case, which was to say, okay, we have a question presented that poses a question of indirect liability. But indirect liability depends on direct liability, and we are not simply going to assume, for argument's sake, this artificial assertion that there is no direct liability. We are going to look and see in Arrow whether the car owner was engaged in — My problem is I have no idea. I mean, I have no idea whether they should be liable or not on the theory of patent infringement themselves. It sounds simple when you take the invention that you gave, but it doesn't sound simple to me when I start thinking about this one, because this one does seem to me a variation on a very old theme, and that is a supplier who makes customized materials, some of which involve standardized materials and some of which have to be shipped from other cities, but — and so it takes time to put it on the truck and get out of the city. But the standardized parts can be shipped from anywhere in the country. It has a system of phoning up standardized people and customized people and putting them all together, and it involves the customer, and there are not just two steps. There are 87 steps, and many of them involve very innocent things, like taking a truck and driving it from one place to another. Now, when we get into something as complicated as that, and this one is even more complex than that, and many of them are things that people do every day, and there are all kinds of states of knowledge, I become very nervous about writing a rule that suddenly might lead millions of people to start suing each other. And that's what I would not like to do unless I have pretty thorough briefing on this subject. Roberts. Justice Breyer, let me answer the question and then get to my — the point I was trying to make in response to Justice Kennedy's question. This case is not complicated. This case involves a four- or five-step method in which Limelight performs all but one or two of the steps and tells its customers, if you want to use our service, you have to perform the other step. Here's exactly how you do it. We have somebody 24 hours a day, 7 days a week assigned to you to help make sure you do it the right way. And the question in this case is whether that constitutes, under 271A, as the jury found and the judge denied Jamal under the law that existed at the time, all of the steps were performed at the — the steps — the step that Limelight's customers performed were at the direction. And, of course, my problem is a rule, and a rule — if this is a simple case, it's hard to me. Why do they have a patent? Well, they do have some forward warehouses. And they phone up and say which one comes from which place. But, you see, I don't understand the underlying stuff, so they probably have a valid patent. I assume that. But some of them could be 87 steps. And I don't have one rule for four steps and another one for 87. Justice Breyer, just so that we're clear, in telling — in urging the Court to address the predicate question of A, liability in this case, we are not suggesting that it would be possible or — well, of course it's possible. Appropriate for this Court to write a treatise on 271A that deals with all method claims, regardless of the state of knowledge of various parties, many of whom don't even know about each other. What we're asking this Court to do is to say either we affirm on 271B or we can't decide or shouldn't decide the 271B question until there is consideration of the question on which you — the basis on which you vacated the panel decision and granted review, because in — as in Lebron, and this is an a fortiori case from Lebron, as in Lebron, it's not satisfying to us as a panel. Breyer, I'd have the same question, by the way, as to 271B, exactly the same question. For X number of years, the patent bar and everyone else has lived with the statute and the interpretations which are different from this one. And now, suddenly, we have a new one. And I get the — and now, do you understand my question? Can you apply it to this one, too, and explain why we should say the Federal Circuit is right to depart from a pretty clear understanding differently? Yes, I can. May I just answer — finish answering Justice Kennedy's question before I forget it, which I am greatly in danger of doing? The point here, Justice Kennedy, is whether you would affirm here on 271B grounds or A grounds, the result will be exactly the same. We are not expanding the relief that we are requesting this Court to grant, because even if you just affirm on B, just say the Federal Circuit was right, either because its theory is right or because we think that the common law attribution rules are broader than the Court, the panel, previously had thought, the result is going to be a remand to decide a question — the question of infringement under 154.1 and 271A, because there — as they — as Limelight points out, like, on every third page of its briefs, there is an unresolved pending appellate challenge to the jury's finding that Limelight's So they are going to have to address on remand the question of whether or not there is direct infringement, whether direct infringement occurs. But, Mr. Waxman, if we say something about the 271A question here, it does seem as though it's sandbagging Limelight. Limelight did not brief this until you briefed it, so we have part of Limelight's reply brief. None of the amicus knew — the amici knew that it was in the case until you briefed the 271 issue. So that would seem a real problem in getting to the 271 issue here. Well, Justice Kagan, first of all, I mean, if it were a real problem, the Court could order supplemental briefing. It could order, as it did in Kiobel, order supplemental briefing and have a re-argument in the fall, either on our cross-petition or in the predicate question. But it's not quite as unfair as you think. The question on which the case was briefed and argued, the only question briefed and argued by the parties and 22 amici in the Federal Circuit on bond proceedings was the 271A question. And in response to — in our petition papers, we said, look, whether you grant our predicate question that the Court should address in order to render a meaningful decision and do what it did in Aero and Stoney Payterman. I'm sorry, Mr. Wexler. You tried to dodge Justice Breyer's question earlier, and I'd like to give you a chance to respond. Okay. So the question, as I understand it, is what's your defense of the Federal Circuit's rationale for 271B liability? Is that? Breyer. And my question is one you probably can't answer, which is a problem because you have limited time. And the way — you have such limited time in these complicated cases. And my problem is, the question is, this is so complicated. And the reason that I find it so complicated is I can, and I'll spare you the details, think of so many different kinds of situations with so many different steps in method patents, where so many rights and wrongs of it are differently at play, that I become worried about setting forth any rule. And it's under those circumstances that I say, okay, let's go with what we've had for 30 years, and if Congress feels they should change it, change it. And that's the — that was basically my idea, and it depends upon the complexity, which I'm seeing in my — as I think about it. And it doesn't depend just upon that there were four steps in this case, because there could have been 104. Okay. There could have been 104 different circumstances. Okay. I understand the question, and it's really a hesitation, a concern about saying anything about A. Yes, yes. Or anything about A and also about B, because B — if you're liable under B, my goodness, you can become more easily liable, perhaps, or less easily in some circumstances, but you didn't even — I mean, it's the same question for A and B. Well, go with what you have because I don't understand it well enough to know all the facts and circumstances to which I would be applying a new rule. Justice Breyer, if you are hesitant, and perhaps you should be, to say anything about A or B in the utterly peculiar circumstances of this case, litigated judgment on A, vacation of the panel decision to have argument and decision on A, and then nothing said about A except we don't need to — then the option for the court, it seems to me the best option for the court would be simply to dismiss the petition as improvidently granted or to vacate on the grounds that the — look, you don't ask, you don't get. I'm serious, though, because the real question in this case that you're grappling with is — I mean, it would be clearly presented and you could hear — you know, get full briefing and argument about it in the fall on A as well as B and ultimately have to decide. Sotomayor, this is the decision that the Federal Circuit made below a new decision. Do you have any case that has ever found inducement where there was not direct inducement, direct infringement by someone else? That's not our submission. There's no question that the — This is a new rule by the Federal Circuit. I don't — the principle that — let me — the answer is no. What is new is the 2008 — beginning in 2008 jurisprudence in the Federal Circuit on 271A that unnaturally limited the common law attribution rules. The B decision is not new because — and I say this because the principle is certainly, as the majority said below, you cannot have liability for inducement or contributory infringement unless there is direct infringement. That is tautological. No one disagrees with that. Infringement in the Patent Act is defined in section — in what is now section 154A.1, but was in fact the entire meets and bounds of the patent law starting in the Patent Act of 1836, which is the — and this Court itself has called it the foundational definition of infringement, 154A.1 says that a, you know, a patent holder has the exclusive right to make, sell, use, or offer to sale his invention during the term of the patent. That's what sets out the meets and bounds of the property right. And any encroachment on that property right is an infringement. And therefore, because there — the jury found that all the — I know there's an outstanding question on appeal, but the jury found that every step of — there was an encroachment in this case. There was an infringement. And the patent law, as well as the common law, was very, very clear that whether the underlying conduct was conducted by one person or two people or three people, the party that induced those people to do it was liable. And I would — if you're asking for authority, I don't think that there's a better authority than — well, I'll give you three really good ones, not necessarily in order of importance. The Robinson 1890 Treatise on Patents, which this Court has repeatedly referred to, says point blank and cites authorities for that proposition. So similarly, the Walker Treatise. And finally, this Court's decision — this Court's opinion last month in United States v. Rosemont, which was a criminal aiding and abetting case. But in the course of the Court's discussion, the Court explains that, look, let's take a kidnapping example, and let's say that someone is abducted. But the abduction occurs as a result of four people just basically getting together and say, you know, you provide the home or the warehouse. Kagan. Mr. Wexman, I think it's a very different situation. I mean, in that case, it's clear that there was a kidnapping. It happened to be a kidnapping done by four people rather than a kidnapping done by one person. But there was a kidnapping. Now, in your case, I don't think you can say the same thing, because the question is, is there an infringement? Under Federal Circuit law, there is no infringement when different people do these different steps of the process. That's just the fact of the matter. Well, I'm on thin ice indeed, Justice Kagan, in arguing with you or dialoguing with you about what Rosemont, the Rosemont opinion involved. But let me take a valiant step in any event. What this Court said was that from the perspective — and the two treatises that this Court cited also say this — from the perspective of the victim, which is the perspective that the Court used in the example and is the perspective that the common law of torts takes, there was an encroachment upon rights. Now, what this Court said in its discussion is none of those four people are liable for kidnapping as a principle, but they are all liable under the common plan analysis for indirect liability. And that is — what is really most notable about the common law is — and the early patent cases — is how assiduously, going back at least through the 19th century, the courts worked to make sure that where there was an invasion of the property or personal right, either in criminal law or in civil tort law, that parties that cooperated with each other or a party that was directing other parties to do it were held liable whether one person did elements A, B, C, or D or not. Kagan. But I think, again, Mr. Waxman, what your argument just glides over is that you need the infringement. And the question is whether under substantive law you have the infringement when different people do different steps of the process. And as I understand the Federal Circuit's law in this area, it's that you don't have any infringement when different people do different steps of the process. So that takes you back to the 271A question, which you think is wrong, but if it's right, you just don't have an argument on the 271B question. Waxman. No. The Federal Circuit's law, as announced by the majority below, is that you have B liability when there is infringement as defined by 154.1. And here, the patent law and the common law didn't — An infringement without an infringer. You can certainly have infringement without an actionable infringer, absolutely. Under anybody's rule, you can do that. The whole debate we have with the other side on the A question is how — what attribution rules do or don't apply. But if you have an example, to take, Justice, one of the things that's — one of the — one small part of what's bothering Justice Breyer, you have a situation where however many steps there are and however many parties there are, there are some parties that don't know about each other or what they're doing. In those circumstances, the common law doesn't apply liability, and therefore, you would have an instance in which there could be an infringement under 154.1 in the patented method are performed, but there will be no liability because the performers were not acting in concert or at the direction or control of each other. And that's — that's why I think what the Federal Circuit did on its own terms is not novel. It accepted the proposition that you can't have inducement liability unless there is an infringement, unless there is a tort. And — Sotomayor, making 271B a strict liability crime? No. No, no, no. I'm sorry. I don't — Everybody who performs — who performs the steps to get — if they get to the patented method, they have — No, absolutely. Under Global Tech, there's no liability under 271B unless there is an intent by the inducer to, in fact, violate — infringe the patent. So to give you an — a prosaic example, let's say — The inducer intends to — in your example, is the customer intending to violate the patent? They do? In our example, no. I mean, there's no facts here to suggest that — that Limelight's customers even forget knowing about the patent. They don't even know what steps Limelight is taking. All they know is Limelight is saying, hey, if you use our service and you provide our pointer or — or tag, we'll provide you all this content instantaneously. So there is no liability, although there is liability because there is knowledge on the part of Limelight, which is asking its customers to — telling its customers to do exactly what Akamai is asking and telling its customers to do. So in short, we think that the Federal Circuit, the en banc Federal Circuit, is correct even on its own terms, because there was an act of infringement in this case. There was infringement in the sense that all the steps of the patented method were performed, whether or not there is an attribution rule that would apply liability to one or more of those parties under 271A. What does — what does B require? Does it require inducing an infringement or inducing an infringer? Inducing an infringement. And I'll give you a concrete example. Let's say that there's a five-step patented method that I know about, and I convince — I induce Mr. Panner to do steps 1, 2, and 3, and Ms. Anders to do steps 4 and 5. If I'm doing that because I know about the patent and I want to take advantage of their otherwise innocent performance collectively of the steps, at common law and at patent law, it was uncontroversial that I was liable, I was responsible. Just — I don't want to belabor the Rosemont point because I have a skeptical author looking at me, but the common law made — the cases going back made clear that there was no escape from liability, even though neither Mr. Panner nor Ms. Anders may be directly liable if they didn't know that each other was doing the steps or otherwise cooperate with each other. And that's what this case is, and that's why the Federal Circuit's decision on its own terms is correct. Thank you. Roberts. Thank you, counsel. Mr. Panner, 4 minutes. Thank you, Mr. Chief Justice. In 1952, Congress adopted a statute that took the development of infringement law largely out of the hands of the courts. There are — there's a statute, strict liability, 271A provision that provides for direct infringement. There are two basic indirect infringement statutes, 271B, which requires inducing infringement, and 271C. And 271C is sort of interesting because it has a very specific limitation on when providing a component of an invention will lead to liability. And what Congress said was if it's a specially adapted component and it brings about infringement, there can be liability in that circumstance. But even if you know that what you're selling is going to lead to infringement, if it's a staple article of commerce, we don't impose liability in that situation. That's the kind of line drawing that Congress does. Congress has done — has made adjustments when it felt appropriate, and this Court has not hesitated to stick to the lines that Congress drew, and that's what it should do in this case, unless the Court has questions. Thank you, counsel. The case is submitted.